## Tomb v. Lambert

*John B. Leete,* for plaintiffs.
*Perry S. Patterson,* for defendants.

FINK, *P.J.,* April 12, 1985—The basic facts which have given birth to approximately two and one-half pounds of pleadings are as follows: defendants were the owners of a tract of land situate in Potter County containing 58.13 acres. Defendants and plaintiffs entered into an agreement with option to purchase with reference to said tract of land whereby defendants were to sell said acreage to plaintiffs for the sum of $35,000 upon the exercise of the option within three years from the date of contract. The date of the contract was June 1, 1981. On April 23, 1984, plaintiffs, by registered mail, exercised the option to purchase as set forth in the agreement.

In or about the months of July or August, 1983, before the exercise of said option by plaintiffs, defendants had entered into an agreement with a third party for the removal of certain timber situate on the premises, the value of which plaintiffs allege was $2,800. At the time plaintiffs sought to exercise the option they were aware of the timber sale aforementioned but, nonetheless, consummated the purchase pursuant to the option by paying the purchase price of $35,000. Plaintiffs now seek to recover the value of the timber cut from the premises prior to the option exercise through a complaint in assumpsit alleging a breach of the option agreement between the parties' litigant.

The issue comes before the court on a motion for judgment on the pleadings filed by both parties, and although the parties acknowledge that the pleadings raise at least one disputed fact, the court finds that the fact in dispute so raised is not relevant and, therefore, will decide the issue of whether or not there is a cause of action stated by plaintiff or whether defendants raise a valid defense. We would understand that such a decision would be dispositive of the dispute between the parties, there being no other disputed issue of fact. There is, essentially, an agreement between the parties for the judicial disposition of the matter as indicated.

Defendants raise a defense which defense counsel calls the "doctrine of merger", that is, that any cause of action that plaintiff had arising from the agreement between the parties merged in the exercise of the option to purchase the subject property and subsequent acceptance of the deed of conveyance by plaintiffs and, therefore, plaintiffs have no cause of action on which to predicate their claim.

Defendant cites three rather ancient cases, Stoever, et al. v. Gowen, et al., 280 Pa. 424 (1924); Dick v. McWilliams, 291 Pa. 165, 139 Atl. 745 (1927); and Dobkin v. Landsberg, 273 Pa. 174, 116 Atl. 814 (1922), which, essentially, stand for the proposition that when a deed is made and accepted in full execution of a contract for sale of land, the contract of purchase is merged in the deed. Defendants assert that at least there is a presumption of merger arising by the acceptance of the deed by plaintiffs and the payment of the total purchase price therefor.

Plaintiff, on the other hand, asserts the doctrine of equitable conversion under the facts, viz., that the original agreement containing the option to purchase vested in plaintiffs' equitable title to the real

estate. Therefore, defendants during the period of the option until exercised or expired are considered in law trustees of the realty for plaintiffs. Plaintiffs cite the case of Payne v. Clark, 409 Pa. 557, 187 A.2d 169 (1963). Plaintiffs further present the legal proposition that when the option is exercised by optionee, his equitable title relates back to the date of the option and equitable ownership reverts to the granting of the option, P.L.E., Sales of Realty, Section 19.

Each of the respective positions of the parties are tenable under the facts, therefore, we must consider each of the positions. As above stated, defendants "stake their claim" on the doctrine of "merger", viz., that any cause of action arising from the agreement of sale is merged in the conveyance by deed of the property which was the subject matter of the agreement of sale. This court would believe that argument could be had that defendants were actually arguing a doctrine of "waiver", viz., plaintiffs by accepting the deed and paying the full "option price" had waived any right they had to assert a claim that they were not getting that for which they had originally bargained in their option agreement where plaintiffs knew of the cause of action at the time they accepted the deed and made the full payment. It could, likewise, be argued that plaintiffs' position was really an "estoppel", that is, that an estoppel was created by the acceptance of the ultimate deed and payment of the full purchase price and, therefore, plaintiffs would be estopped to assert that they got less than they had originally bargained for in their option agreement.

As above set forth, defendants set forth various cases to support their contention that the doctrine of merger was, indeed, applicable to the set of facts in the instant case. The basic principle, as pronounced

in the cited cases by defendant, ultimately appears to operate against them, viz., "merger is a matter of intention of the parties and may be shown by their declarations, acts or conduct at the time of the execution of the agreement in question or from the terms of the writing itself."

All parties agree that there are no essential disputed matters of fact, therefore, the only source which this court has to determine the intention of the parties is, indeed, the writing itself which forms a part of the pleadings. The option granted to plaintiffs by defendants is contained in an agreement of sale between the parties of an adjacent tract of land containing 14.67 acres. The wording of the option reads as follows: (the first party being defendants and the second party being plaintiffs.)

"Parties of the First Part agree to give the Parties of the Second Part an option for a period of three (3) years from the above written date to purchase the balance of this parcel containing 58.13 acres at a price of $35,000 provided the entire balance owing under this agreement is paid off at such time. In addition, the Parties of the Second Part will, in the event the option is not exercised, have a first refusal between the third and fifth year from above written date (June 1, 1981) exercisable at the expiration of the fifth year to purchase the 58.13 acre tract at a mutually agreeable negotiated price."

The pleadings further disclose that plaintiffs (erroneously referred to as defendants in Paragraph 4(c) of plaintiffs' motion for summary judgment) on April 23, 1984, exercised the option to purchase the 58.13 acres of land. It is further alleged, and apparently agreed, that in the months of July and August of 1983, defendants caused a timber cutting to transpire on the subject property which, in turn, caused the removal of timber valued at $2800.

Plaintiffs seek the $2800 that they allege they had been diminished by the timber cutting during the period of time that they had granted to them an option to purchase. It appears to the court that the essence of defendants' position is if there was a cause of action at all, plaintiffs would be compelled to assert their cause of action and perhaps at the same time tender the purchase price of $35,000 into court perhaps along with a petition requesting the court to accept the payment of "tender" into court which may or may not be reduced by the ultimate outcome of litigation concerning the timber cutting and then paid to defendants in return for a deed pursuant to the option.

There is no doubt that defendant breached the grant of the option to purchase given to plaintiffs by allowing the timber cutting to take place. The issue put in another way is: Are plaintiffs precluded by virtue of merger, waiver or estoppel from asserting their cause of action for the timber cutting by virtue of the exercise of the option, the payment of the full purchase price, and the receipt of the deed of conveyance? We think not. If it were to be as defendants contend, it would appear that any seller under an option to purchase granted by that seller could frustrate the grant of the option and the ultimate purchase merely by intentionally reducing the value of the property under option or, in the alternative, compel the grantee of the option to first institute suit and run the chance that the time would expire to exercise the option prior to a legal determination of the lawsuit. There was no intention evidenced within the four corners of the agreement that plaintiffs' cause of action, if any, would merge in the ultimate conveyance or by the exercise of the option.

This court is of the belief that the doctrine of equitable conversion does, indeed, apply and plaintiffs

as optionees obtained equitable title upon the grant of the option, and therefore, the cause of action for the breach of the option agreement vested in plaintiffs as equitable owners as soon as the cause of action arose. Once the cause of action vested, it could not be defeated by the doctrines of merger, waiver or estoppel, or anything short of the passage of the statute of limitations or the doctrine of res judicata or collateral estoppel, based on the assertion of a cause of action which was brought to its ultimate conclusion. The principle was properly set forth in Byrne v. Kanig, 231 Pa. Super. 531, 332 A.2d 472 (1974), wherein the court stated:

"When an unconditional agreement for the sale of land is signed, *vendor* retains security interest for payment of the unpaid purchase price, and purchaser becomes equitable or *beneficial owner* through the doctrine of equitable conversion . . . and is entitled to any benefit accruing to property between date of execution of the agreement of sale and conveyance."

The correlation to the doctrine stated in Byrne is that the beneficial owner (plaintiffs herein) would, likewise, have a cause of action for any diminution of the value of the land in question.

Having thus decided the identity of the party who is to prevail in this lawsuit, the only other question to be resolved is whether or not plaintiffs are entitled to the *value* of the timber taken as opposed to what defendants actually received therefor which resulted from an arm's length transaction. Plaintiff might well assert that they are entitled to exercise a choice of whether they wished to recover the value of the timber at the time it was cut or that which the sellers received for the timber resulting from an arm's length sale, whichever would be the greater. This theory might will be contended based upon the

agreement that if it were otherwise, plaintiffs might well be the ones to suffer from a "bad sale" negotiated by defendants. Plaintiffs could further contend that they would be entitled to the value in any event, as they did, if the sellers had cut the timbers themselves and used it for their own purposes without sale to anyone.

If the measure of damages would not be the *value* under such a situation, what then would be the basis of damages? We do understand that in the instant case defendants did sell the timber cut for an amount substantially less than the value alleged by plaintiffs. However fair it seems, we are compelled to find that plaintiffs are only entitled to the money received by defendants through an arm's length sale of the timber. We find this because of the legal principle presented by plaintiffs themselves and as cited in Payne v. Clark, 409 Pa. 557, 187 A.2d 769 (1963) wherein it is stated that the vendors (defendants herein) are considered as trustee for the purchaser. If this is so, defendants, in effect, hold the proceeds of the timber sale for plaintiffs and, fairly or unfairly, this is the measure of damages which plaintiffs may recover. If defendants had cut the timber and used it for themselves and there was no sale, only then could plaintiffs assert the *value* as being the measure of damages.

Thus, the following

## ORDER OF COURT

And now, this April 12, 1985, a verdict is entered in favor of plaintiffs and against defendants in a sum equal to the sales price of the timber severed from the subject premises. If this amount cannot be stipulated, it is directed that the parties submit proofs on the sole issue of "sales price" of the timber

on a day certain to be hereafter set if a stipulation is not presented and filed within ten days from the date hereof.